**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **CITIZENS INSURANCE,** | ) | **Case Nos. 1:07 CV 241** |
| | ) | **1:07 CV 467** |
| | ) | **1:07 CV 469** |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **Judge Dan Aaron Polster** |
| | ) | |
| **LANLY COMPANY,** | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| **Defendant.** | ) | |

Plaintiff Citizens Insurance ("Citizens"), a Michigan corporation, insured Defendant The Lanly Company ("Lanly"), an Ohio corporation, from February 20, 1998 through February 20, 2003 under commercial general liability ("CGL") insurance policies. Lanly has recently been named as one among numerous defendants in three separate state court actions. The actions are brought by persons, or the estates of persons, who worked in refractories in Ohio, West Virginia and California.[1] The workers (or their estates) are suing the owners of the refractories, the employers for whom they worked, and the manufacturers of asbestos-containing products used in the refractories – seeking liability for injuries they claim to have suffered due to exposure to airborne asbestos in the workplace. With respect to Lanly, the workers claim that

---

[1] The underlying cases are *Wright v. A.W. Chesterton, Inc.*, Cuyahoga County, Ohio, Common Pleas Court Case No. CV-05-554942; *Thompson v. A&I Co., Inc.*, Kanawha County, West Virginia, Circuit Court Case No. 06-2170; and *Engstrand v. A.W. Chesterton Co., et al.*, San Francisco, California, Superior Court Case No. 06-455801).

their injuries were caused by exposure to asbestos emanating from Lanly-manufactured industrial ovens.

Upon notification by Lanly of these lawsuits, Citizens agreed to defend Lanly with a reservation of rights in the Ohio and West Virginia cases, but refused to defend Lanly in the California case. Citizens then filed a federal declaratory judgment action under 28 U.S.C. § 2201 against Lanly in this district court. The Court asked Citizens to file a separate complaint for each underlying state case. Citizens did so, and there are now three separate declaratory judgment actions pending before me.[2]

Citizens asked the Court to exercise discretion under § 2201 and declare that the subject insurance policies do not obligate Citizens to defend or indemnify Lanly in the underlying state cases. Citizens' position is based upon pollution-exclusion provisions contained in the CGL policies. Lanly filed an answer and counterclaim under § 2201, asking the Court to declare that the CGL policies do indeed provide defense and indemnification coverage for the underlying cases.[3]

On April 11, 2007, the Court held a Case Management Conference, after which it issued an order reflecting the parties' agreement to brief the question of whether, under Ohio law, industrial exposure to asbestos is considered a "pollutant" for purposes of pollution-exclusion clauses such as those contained in the subject insurance policies.[4] After the Court

---

[2]The Ohio case number is 1:07CV241, the West Virginia case number is 1:07CV467, and the California case number is 1:07CV469.

[3]*Case No. 1:07CV241, ECF No. 12*; *Case Nos. 1:07CV467 and 1:07CV469, ECF No. 4.*

[4]*Case No. 1:07CV241, ECF No. 19*; *Case Nos. 1:07CV467and 1:07CV469, ECF No. 11*.

reviewed the parties' briefs,[5] the Court issued a Show Cause Order on June 22, 2007 expressing its belief that an unreported Ohio appeals court case, *Selm v. American States Insurance Co.*, No. C-010057, 2001 WL 1103509 (Ohio App. 1 Dist. 2001) (holding that asbestos is a pollutant for purposes of a pollution-exclusion clause), is on point and potentially dispositive of this case, and directing the parties to file briefs explaining why *Selm* is, or is not, dispositive.[6]

After the parties filed their supplemental briefs[7] and while the Court was preparing its decision, the Court of Appeals for the Sixth Circuit issued a decision entitled *Travelers Indemnity Co. v. Bowling Green Professional Associates, PLC*, 495 F.3d 266 (6th Cir. 2007). There, the Sixth Circuit reversed a district court's decision to exercise federal declaratory judgment jurisdiction over an insurance coverage case. After reviewing the case, the Court issued a second Show Cause Order expressing its belief that *Travelers* required the Court to decline jurisdiction over these insurance coverage cases.[8] The Court directed the parties to file "either a short statement that *Travelers* requires the Court to decline to exercise jurisdiction over these pending federal declaratory judgment insurance coverage cases, or a memorandum explaining why *Travelers* is distinguishable from them."[9] The parties timely filed their briefs.[10]

---

[5]*Case No. 1:07CV241, ECF Nos. 20-23*; *Case Nos. 1:07CV467and 1:07CV469, ECF Nos. 12-14*.

[6]*Case No. 1:07CV241, ECF No. 24*; *Case Nos. 1:07CV467and 1:07CV469, ECF No. 15*.

[7]*Case No. 1:07CV241, ECF No. 26-29*; *Case Nos. 1:07CV467and 1:07CV469, ECF Nos. 17-20*.

[8]*Case No. 1:07CV241, ECF No. 31*; *Case No. 1:07CV467, ECF No. 21*; *Case No. 1:07CV469, ECF No. 22*.

[9]*Id.*

[10]*Case No. 1:07CV241, ECF No. 32-34*; *Case No. 1:07CV467, ECF Nos. 22-24*; *Case No. 1:07CV469, ECF No. 23-25*.

The Court has now reviewed all the briefs and the record and is prepared to issue its ruling.

"Exercise of jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), is not mandatory." *Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 812 (6th Cir. 2004). Rather, a district court "may declare the rights and other legal relations of any interested party seeking such declaration . . .." 28 U.S.C. § 2201(a). The statute, thus, affords the district court discretion "in determining whether and when to entertain a case brought under the Declaratory Judgment Act, even when the case otherwise satisfies subject matter jurisdiction prerequisites." *Adrian Energy Assoc's. v. Mich. Pub. Serv. Comm'n*, 481 F.3d 414, 421 (6th Cir. 2007) (quotation omitted).

In *Grand Trunk Western Railroad Co. v. Consolidated Rail Corp.*, 746 F.2d 323 (6th Cir. 1984), the Sixth Circuit identified the following factors which the Court must consider in determining whether to exercise jurisdiction over a declaratory judgment case:

(1) whether the declaratory action would settle the controversy;

(2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;

(3) whether the remedy is being used merely for the purpose of "procedural fencing" or to provide an arena for a race for *res judicata*;

(4) whether the use of a declaratory judgment action would increase friction between our federal and state courts and improperly encroach on state jurisdiction; and

(5) whether there is an alternative remedy that is better or more effective.

*Id*. at 326. When evaluating the fourth factor, the Court must also consider: (1) whether the underlying factual issues are important to an informed resolution of the case; (2) whether the state court is in a better position to evaluate those factual issues than the federal court, and (3) whether there is a close nexus between the underlying factual and legal issues and state law

and/or public policy, or whether federal common law or statutory law dictates a resolution of the declaratory judgment action. *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 967-68 (6th Cir. 2000). Citizens argues that the instant case is distinguishable from *Travelers* and the Court should choose to exercise jurisdiction over it. Lanly takes the opposite stance.

In *Travelers*, Jonas Wampler received a methadone treatment at Bowling Green Professional Associates ("Bowling Green"), an out-patient drug treatment facility. 495 F.3d at 269. Following the treatment, he left the clinic in his car. *Id*. As he was driving, he crossed into the oncoming lane and struck a vehicle driven by Stephanie Caudill; both were killed. *Id*. Caudill's estate brought a wrongful death action in state court against Bowling Green and the Wampler estate. *Id*. The Wampler estate filed third-party wrongful death claims against Bowling Green and the physician who administered the methadone treatment. *Travelers,* 495 F.3d at 269. Bowling Green sought defense and indemnity coverage from its insurers, Travelers Indemnity and Evanston Insurance Company. *Id*. Travelers agreed to defend Wampler temporarily under a reservation of rights; then filed a declaratory judgment action in federal court, seeking a declaration that it owed no duty to defend or indemnify Bowling Green in the underlying state court action. *Id*. Evanston cross-claimed seeking a similar declaration. *Id*. The district court granted the insurers' motions for declaratory judgment. *Id*. Bowling Green appealed, and the Sixth Circuit reversed, holding that the district court abused its discretion in exercising declaratory judgment jurisdiction.

With respect to the first *Grand Trunk* factor, the *Travelers* court found that, while the district court's decision would settle the controversy between Bowling Green and its insurers over coverage, it would not resolve the controversy between the Wampler and Caudill estates

and Bowling Green in the underlying liability case because the estates were not parties in the declaratory judgment action. *Travelers*, 495 F.3d at 272. Thus, the first factor weighed against the exercise of jurisdiction. *Id*. Regarding the second factor, the court determined that, while resolution of the insurance coverage issue would clarify the insurers' obligation to defend Bowling Green in the state case, it would do nothing to clarify the legal relationship between the parties in that case. *Id*. Thus, the second factor weighed against the exercise of jurisdiction. *Id*. The *Travelers* court found that the third factor weighed neither for nor against exercising jurisdiction because there was no evidence the declaratory judgment action was an attempt at procedural fencing. *Id*. The *Travelers* court found that the fourth factor weighed against exercising jurisdiction since the state court was in a better position to apply and interpret state law issues. *Id*. Finally, the *Travelers* court found that the fifth factor weighed against exercising federal jurisdiction because the insurance companies could file either a state declaratory judgment action or an indemnity action at the conclusion of the underlying liability case. *Id*.

Turning to an evaluation of the *Grand Trunk* factors in the instant case, I find that, although the declaratory judgment action would settle the controversy between Citizens and Lanly as to insurance coverage, it would not settle, globally, the various underlying liability cases. Thus, the first factor weighs against the exercise of jurisdiction.

Adjudicating the declaratory judgment action might serve a useful purpose, however. Since Lanly is currently being sued by unrelated plaintiffs in three different states, a district court action in the State which governs the insurance coverage issue would be preferable to actions being brought in other states. This factor tends to favor the exercise of jurisdiction.

-6-

There is no evidence, and Lanly has not argued, that Citizens filed this case in order to gain a procedural advantage. As in *Travelers*, this factor is neutral.

It is the fourth *Grand Trunk* factor that, I find, weighs heavily against the exercise of federal jurisdiction. After reviewing the policies and the relevant cases, it has become clear that the use of a declaratory judgment action would unnecessarily increase friction between the federal and state courts and improperly encroach on state jurisdiction.

Initially, these cases appeared to present a straightforward legal issue (i.e., whether asbestos is considered a "pollutant," for purposes of a pollution-exclusion provision, in the State of Ohio) that could be decided based on written briefs. However, as the parties do not even agree on which pollution exclusion applies, there is a risk that any decision would be advisory.[11]

More importantly, resolution of the issue in this case necessarily requires the district court to interpret an Ohio insurance contract – traditionally a matter of state common law. The Sixth Circuit has observed that state courts are more familiar with, and better able to resolve, such insurance questions. *Travelers*, 495 F.3d at 272 (*citing Bituminous*, 373 F.3d at 815). Indeed, "[s]tates regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce the public policies that form the foundation

---

[11]Citizens argues that endorsement CG 21490196, excluding coverage for injury that would not have occurred but for the discharge, dispersal, seepage, migration, release or escape of pollutants "at any time," applies. *See, e.g., Case No. 1:07CV241, ECF No. 20* at 4-5, *ECF No. 23* at 5-6. Lanly argues that CG00540397, excluding coverage for injury that would not have occurred but for the discharge, dispersal, seepage, migration, release or escape of pollutants "at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured," applies. *See, e.g., Case No. 1:07CV241, ECF No. 21* at 2-3, 5-6. This dispute is not surprising since there are four different policies under which Lanly was insured over a five-year period, with differently worded exclusions and endorsements, not to mention one amendment. *See Case No. 1:07CV241, ECF No. 9, Ex. 2*.

of such regulations." *Id*. (*quoting Allstate Ins. Co. v. Mercier*, 913 F.2d 273, 275 (6th Cir. 1990)). Thus, while federal courts are capable of interpreting state law, there is no question that Ohio courts are in a better position to do so – particularly here, as will be explained below.

Lanly contends that the Ohio Supreme Court decision in *Andersen v. Highland House Co.*, 93 Ohio St.3d 547 (2001) is on point and requires a finding in its favor. In *Andersen*, the owner of an apartment complex was sued when a resident died after inhaling carbon monoxide fumes released from a faulty heating unit. 93 Ohio St.3d at 331. The apartment owner sought indemnification under a CGL policy, but the insurer denied coverage based on a pollution-exclusion clause. *Id*. at 331-32. The *Andersen* court determined that the clause was ambiguous when applied to bodily injuries suffered due to residential carbon monoxide poisoning. The court looked to the history and original purpose for which pollution exclusions were drafted by the insurance industry, i.e., "to bar coverage for gradual environmental degradation of any type and to preclude coverage responsibility for government-mandated cleanups." *Id*. at 550 (citation omitted). Based on this history, the court found that it was reasonable for the insured apartment owner to believe that its policies would not exclude claims for bodily injury to residents due to carbon monoxide leaks. The court also noted that it would be remiss "to simply look to the bare words of the exclusion, ignore its *raison d'etre*, and apply it to situations which do not remotely resemble traditional environmental contamination." *Id*. at 552. (*quoting Vantage Dev. Corp. v. Am. Envtl. Tech's. Corp.*, 251 N.J. Super.516, 525, 598 A.2d 948 (1991)). Thus, the Ohio Supreme Court concluded that carbon monoxide emitted from a malfunctioning residential heater is not a pollutant under the pollution-exclusion clause "unless specifically enumerated as such." *Id*. at 552.

*Andersen* is not on point because it involves residential carbon monoxide poisoning, whereas the instant case involves industrial asbestos poisoning. Based on sweeping language in the *Andersen* court's majority opinion, however, Lanly reasonably argues that asbestos is not a pollutant because it is not "specifically enumerated" as such in the subject pollution-exclusion provisions, and that the provisions are ambiguous because exposure to asbestos in the workplace is not tantamount to "traditional environmental contamination." The Ohio Supreme Court's use of broad language to decide a fairly narrow question has proved problematic in *Andersen's* wake. *See, e.g., Pure Tech. Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 Fed. Appx. 132, 137-38 (6th Cir. 2004) (noting that, while *Andersen* "arguably bespeaks a general method of interpreting pollution exclusions," the court is not "at liberty to graft an additional term onto the exclusion based on the exclusion's history, especially a term as vague and potentially unworkable as 'traditional environmental contamination.'"); *Rybacki v. Allstate Ins. Co.*, No. 03CA0079-M, 2004 WL 894406 (Ohio App. 9 Dist. Apr. 28, 2004) (confining *Andersen* to its facts and finding that a similar pollution exclusion in a homeowners policy unambiguously precluded coverage for damages arising from the rupture of the homeowner's underground heating oil tank).

Also, the *Andersen* majority never directly addressed whether carbon monoxide is a pollutant. The court further muddied the waters, however, by noting that, "[w]hile a reasonable person of ordinary intelligence might well understand [that] carbon monoxide is a pollutant when it is emitted in an industrial or environmental setting, an ordinary policyholder would not reasonably characterize carbon monoxide emitted from a residential heater which malfunctioned as 'pollution.'" *Andersen*, 93 Ohio St.3d at 551 (*quoting Reg'l Bank of Colo., NA*

*v. St. Paul Fire & Marine Ins. Co.*, 35 F.3d 494, 498 (10th Cir. 1994)).  Arguing for a different but plausible reading of *Andersen*, Citizens argues that airborne asbestos is a pollutant when it is emitted in an industrial setting.

Adding to the confusion are lower court opinions in Ohio holding both that asbestos is, and is not, a pollutant for purposes of pollution-exclusion clauses.  *Compare Selm v. Am. States Ins. Co.,* No. C-010057, 2001 WL 1103509 (Ohio App. 1 Dist. 2001) (holding that asbestos, unwittingly released into a residence by a contractor who sanded a vinyl kitchen floor, is a pollutant) *with Owens-Corning Fiberglas Corp. v. Allstate Ins. Co.*, 74 Ohio Misc.2d 144 (1993) (holding that airborne asbestos in the workplace is not a pollutant).  When, as here,  there is not an Ohio Supreme Court opinion on point, a federal court sitting in diversity must follow appellate court opinions on point, regardless of whether published or unpublished, unless convinced that the Ohio Supreme Court would rule otherwise.  *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 517 (6th Cir. 2001).  While *Selm* is an unpublished appeals court decision holding that asbestos is a pollutant, it preceded *Andersen* and involved the release of asbestos into a residence.

The question presented in this case is an unsettled issue of insurance law with potentially far-reaching consequences.  Because state courts are best situated to identify public policy concerns affecting insurance law and to enforce them, I conclude that the fourth *Grand Trunk* factor weighs heavily in favor of declining jurisdiction.

Finally, there is an alternative remedy that is better than litigation of this issue in federal court, i.e., a declaratory judgment or indemnification action in an Ohio state court.

There, litigation and any appeals of this issue would be handled strictly by Ohio courts. Accordingly, the fifth factor also weighs against exercising jurisdiction over this case.

The Court concludes, on the whole, that the *Grand Trunk* factors weigh against exercising jurisdiction in this case. The Sixth Circuit made clear in *Travelers* that insurance coverage issues should generally be resolved by state courts, and that the exercise of federal declaratory judgment jurisdiction over such cases is disfavored. I understand that *Travelers* does not create a *per se* rule precluding the district court from exercising jurisdiction over all federal declaratory judgment cases involving insurance coverage. However, the unsettled state of Ohio law on this particular issue and the policy implications of the decision weigh against the exercise of federal jurisdiction over a purely state law insurance matter.

**IT IS SO ORDERED.**

*/s/Dan Aaron Polster     October 23, 2007*
**Dan Aaron Polster**
**United States District Judge**